**S.S.M., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF FAMILY AND YOUTH SERVICES, Appellee.**

**Nos. S–9381.**

Supreme Court of Alaska.

June 16, 2000.

---

· Kenneth C. Kirk, Anchorage, for Appellant.

Nora King, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

A child in need of aid was placed with foster parents for ostensibly adoptive purposes. His twenty-year-old natural sister unsuccessfully asked the superior court that he be placed with her under AS 47.14.100(e). Because there was a dispute about whether the child's current placement was actually for adoptive purposes, we hold that AS 47.14.100(f) does not prevent the sister as a matter of law from seeking preferential placement under subsection .100(e). We therefore vacate the order denying the sister's motion and remand.

## II. FACTS AND PROCEEDINGS

S.S.M. is J.M.'s natural sister. J.M. was adjudicated a child in need of aid in 1993. In 1996 J.M.'s parents' parental rights were ordered terminated, and he was committed to the state's custody for "adoptive purposes." As of June 1999 he was living with a foster family, with the asserted expectation of the Alaska Division of Family and Youth Services (DFYS) and the foster parents that the foster parents would adopt J.M. S.S.M. was then nineteen years old. S.S.M. asserted, and no one disputes, that she has been an emancipated adult since June 6, 1996.

In July 1999 S.S.M. filed a pro se "Motion to Place Child with Relative" in J.M.'s existing superior court CINA proceeding. S.S.M. asserted in her motion that, despite her repeated requests to DFYS to establish contact with J.M., DFYS refused to consider her for relative placement. She also asserted that she was able to properly provide for J.M. and that placement with her would be in J.M.'s best interests. She finally asserted that DFYS failed to demonstrate that the relative placement preference of AS 47.14.100(e) did not apply.

J.M.'s Guardian ad Litem (GAL) opposed S.S.M.'s motion, arguing that S.S.M. and J.M. have a sibling relationship, not a parental relationship; that it was "not clear" that S.S.M. could provide an appropriate placement; and that it was contrary to J.M.'s best interests to be placed with his sister. DFYS joined the GAL's opposition and also argued that the authority cited by S.S.M. "excludes placement of children placed in department custody for adoptive purposes." S.S.M. filed a reply in which she again asserted that the relative placement preference of AS 47.14.100(e) applied. She argued that J.M. was not placed in DFYS custody for adoptive purposes because six years had passed with no adoption and because no adoption could be "reasonably expected for a 14 year old boy."

The superior court denied S.S.M.'s motion on August 31, 1999. In September the court denied S.S.M.'s motion to reconsider. Now represented by counsel, S.S.M. appeals.

## III. DISCUSSION

### A. Standard of Review

 In a CINA case, we will overturn the superior court's findings of fact only if they are clearly erroneous.[1] Whether the trial court's findings comport with the requirements of the CINA statutes and rules is a question of law which we review de novo.[2] We exercise our independent judgment when interpreting a civil rule.[3] Statutory interpretation raises questions of law to which we apply our independent judgment.[4] We must adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[5]

### B. Jurisdiction

 We first consider, and reject, DFYS's argument that we have no jurisdiction to consider S.S.M.'s appeal. DFYS asserts that

---

1. *See In re S.A.,* 912 P.2d 1235, 1237 (Alaska 1996).

2. *See E.M. v. State,* 959 P.2d 766, 768 (Alaska 1998).

3. *See Ford v. Municipality of Anchorage,* 813 P.2d 654, 655 (Alaska 1991).

4. *See Brandon v. State, Dep't of Corrections,* 938 P.2d 1029, 1031 (Alaska 1997).

5. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

there is no final, appealable order which would satisfy Alaska Appellate Rule 202(a).

The superior court denied S.S.M.'s motion. Given the reasons raised by the GAL and DFYS in opposing S.S.M.'s motion, we assume that the court rejected the motion on the merits, not for any procedural deficiency.

As to S.S.M., the court's ruling was final and on the merits.[6] It left nothing further for the court to do with respect to her motion for J.M.'s placement. J.M.'s CINA proceeding remains open, but, absent a change in the placement plan for J.M., the placement goals for J.M. would not change, and he would not be placed with S.S.M., but would continue to be placed awaiting adoption. We have recognized in context of children's proceedings that issues may sometimes be revisited without destroying the finality, and therefore the appealability, of other issues.[7] We hold that the order denying S.S.M.'s placement motion is final for purposes of appellate review.

### C. Intervention

■ The superior court had previously returned to S.S.M. papers she had submitted to the court for filing and noted that her proper procedure was to intervene in J.M.'s superior court CINA proceeding. S.S.M. never moved to intervene, and instead simply moved for placement. But as DFYS conceded at oral argument on appeal, S.S.M. is effectively a party by virtue of this appeal. It is not obvious how any valid objection could be asserted to S.S.M.'s de facto intervention in J.M.'s CINA proceeding, given her invocation of subsection .100(e). Neither the GAL nor DFYS opposed S.S.M.'s 1999 motion on procedural grounds that she was not entitled to intervene. Given DFYS's concession on appeal, and the failure to raise any objection on this procedural ground in 1999, we hold that S.S.M. is entitled to intervene as of right on remand.[8]

### D. Application of AS 47.14.100(e) to S.S.M.

Alaska Statute 47.14.100(e) gives preference to a blood relative who requests placement of a child in need of aid, absent three exceptions.[9] In pertinent part, the statute provides that "a child may not be placed in a foster home or in the care of an agency or

---

6. See Greater Anchorage Area Borough v. City of Anchorage, 504 P.2d 1027, 1030 (Alaska 1972), overruled in part on other grounds by City of Juneau v. Thibodeau, 595 P.2d 626, 629 (Alaska 1979).

7. We have allowed appeals at various stages of CINA proceedings, albeit often without challenge. See, e.g., In re J.A., 962 P.2d 173, 175 (Alaska 1998) (appeal from probable cause determination); In re J.W., 921 P.2d 604, 606 (Alaska 1996) (appeal after termination of parental rights); In re A.S.W., 834 P.2d 801, 803 (Alaska 1992) (appeal after disposition hearing); In re A.B., 791 P.2d 615, 617 (Alaska 1990) (appeal from superior court decision rendered on annual review of placement order).

8. See Alaska R. Civ. P. 24(a).

9. AS 47.14.100(e) provides:
 (e) A child may not be placed in a foster home or in the care of an agency or institution providing care for children if a relative by blood or marriage requests placement of the child in the relative's home. However, the department may retain custody of the child and provide for its placement in the same manner as for other children if the department
 (1) makes a determination, supported by clear and convincing evidence, that placement of the child with the relative will result in

physical or mental injury; in making that determination, poverty, including inadequate or crowded housing, on the part of the blood relative, is not considered prima facie evidence that physical or emotional damage to the child will occur; this determination may be appealed to the superior court to hear the matter de novo;
 (2) determines that a member of the relative's household who is 12 years of age or older was the perpetrator in a substantiated report of abuse under AS 47.17; or
 (3) determines that a member of the relative's household who is 12 years of age or older is under arrest for, charged with, has been convicted of, or has been found not guilty by reason of insanity of, a serious offense; notwithstanding this paragraph, the department may place or continue the placement of a child at the relative's home if the relative demonstrates to the satisfaction of the department that conduct described in this paragraph occurred at least five years before the intended placement and the conduct
 (A) did not involve a victim who was under 18 year [sic] of age at the time of the conduct;
 (B) was not a crime of domestic violence as defined in AS 18.66.990; and
 (C) was not a violent crime under AS 11.41.100—11.41.455 or a law or ordinance of another jurisdiction having similar elements.

institution providing care for children if a relative by blood ... requests placement of the child in the relative's home."[10] The statute lists three exceptions: DFYS may not place the child with the requesting relative if DFYS determines (1) that placement with the relative will result in physical or mental injury, (2) that a member of the relative's household was the perpetrator in a substantiated report of abuse, or (3) that a member of the relative's household has been arrested or convicted of a serious offense.[11]

S.S.M. argues that AS 47.14.100(e) requires DFYS to place J.M. with her because she is a blood relative. She asserts that none of the three statutory exceptions in subsection .100(e) applies to her and that therefore DFYS had no legal option but to place J.M. with her.

But AS 47.14.100(f) renders the relative placement preference created in AS 47.14.100(e) inapplicable to "child placement for adoptive purposes."[12] DFYS relies on subsection .100(f) as justification for not placing J.M. with S.S.M. In substance, DFYS argues that J.M. was committed to department custody for adoptive purposes and that subsection .100(f) therefore controls, making subsection .100(e) inapplicable. DFYS does not argue that any of the three exceptions in subsection .100(e) applies to S.S.M., nor does it argue that it has made administrative findings that any of the three exceptions applies to her. DFYS's argument that S.S.M.'s superior court motion was not an administrative appeal implies that DFYS believes it has never had an opportunity to decide whether the subsection .100(e) exceptions might apply to S.S.M.

DFYS also argues that S.S.M. has no standing, because she was not a party to the child's proceeding, and that in any event the superior court did not have authority to order placement because only DFYS has authority to order placement.

▬ S.S.M. clearly has sufficient interest in the proceeding to have standing to assert rights under AS 47.14.100(e). Whether her claims are meritorious remains to be seen. And given the confusion a pro se litigant in S.S.M.'s position justifiably would have felt concerning the appropriate procedure, it is irrelevant to this appeal that DFYS, not the superior court, is primarily responsible for placing a child in a CINA proceeding. A DFYS placement decision is ultimately a matter for superior court review.[13] And indeed, in arguing that subsection .100(f) applies here, DFYS relies on the superior court's May 8, 1996, order committing J.M. to the custody of the state for adoptive purposes.

▬ The proper application of AS 47.14.100 to this case turns on the correct interpretation of these words in subsection .100(f): "Nothing in this subsection or in (e) of this section applies to *child placement for adoptive purposes.*"[14]

This case does not require us to explore the full import of the emphasized words. The superior court order of May 8, 1996 committed J.M. to the state's custody for "adoptive purposes...." The intention then was to place J.M. in a permanent home. As of May 8, 1996, that placement was logical, given that the court had terminated the parental rights of J.M.'s parents, and no relative had requested placement under subsection .100(e). S.S.M. had turned sixteen only three weeks before, and she did not become emancipated until June 1996. There is no indication that S.S.M. had sought, or was then arguably competent to seek, J.M.'s

**10.** AS 47.14.100(e).

**11.** *See* AS 47.14.100(e)(1)-(3).

**12.** AS 47.14.100(f) provides:

> If a blood relative of the child specified under (e) of this section exists and agrees that the child should be placed elsewhere, before placement elsewhere, the department shall fully communicate the nature of the placement proceedings to the relative. Communication un-

> der this subsection shall be made in the relative's native language, if necessary. *Nothing in this subsection or in (e) of this section applies to child placement for adoptive purposes.* (Emphasis added.)

**13.** *See In re B.L.J.,* 717 P.2d 376, 379–81 (Alaska 1986) (noting that superior court can review DFYS placement decisions for abuse of discretion).

**14.** AS 47.14.100(f) (emphasis added).

placement when the court entered its May 8, 1996, order.

Although the record would permit an inference that, as of 1999, J.M. had been placed in a foster home with an intention that those foster parents adopt him, S.S.M. vigorously disputed the likelihood that J.M. would actually be adopted. She noted in the superior court that J.M. was already fourteen years old and that no adoption had taken place in the six years after J.M. was removed from his parental home in 1993, or since entry of the court's May 8, 1996, order committing J.M. to the state's custody for adoptive purposes. S.S.M. therefore asserted that, notwithstanding the 1996 order, no adoption was actually anticipated.

S.S.M.'s assertions squarely raise a question whether J.M. was actually to be adopted by the foster parents with whom he was living in 1999 when S.S.M. moved for placement. The record does not establish whether S.S.M. had any opportunity to participate in any decision to place or continue to place J.M. for adoption with these or other foster parents; S.S.M. argues on appeal that she did not have that opportunity. Moreover, DFYS reported to the court in September 1999 that the then-current foster family no longer considered J.M.'s placement to be permanent. It is unclear when the foster family made that decision or whether that is still their decision, but DFYS's report implies that their decision was based on behavior of J.M. that began in August 1999, soon after S.S.M. filed her placement motion.

There is consequently a fact question about the actual purpose of J.M.'s placement at the time that S.S.M.'s placement motion was before the superior court.

We consider this question to raise a material dispute because we read AS 47.14.100(f) to require a specific nexus between the existing placement and the ultimate purpose of adoption; we do not read the statute to mean that a "placement for adoptive purposes" automatically exists merely because DFYS hopes to eventually find adoptive parents. The basic model of a "placement for adoptive purposes" within the meaning of subsection .100(f) would seem to entail placement of a child with adults who wish to adopt the child. We do not suggest that this is necessarily the exclusive meaning of the phrase. But the statute must be read to contemplate some reasonable likelihood of an adoption in the near future, otherwise the relative placement preference of subsection .100(e) could be overcome at the whim of DFYS.

The May 8, 1996, order committing J.M. to the state's custody for "adoptive purposes" seems not to have approved a particular proposed plan for an adoption in the near future. The order could be read to imply that there was no such plan then in place, because the order required DFYS to report annually to the court on the state's efforts to place the child in a permanent home. Given DFYS's September 1999 report to the superior court, it appears that J.M. might not presently be in a placement for "adoptive purposes" as that phrase is used in subsection .100(f), even though DFYS presumably intends that J.M. will ultimately be adopted.

We do not read AS 47.14.100 to cut off any possible subsequent requests by a blood relative for placement of a child in need of aid after the superior court commits the child to the state's custody with the goal of adoption. It is the specific purpose of the DFYS placement, not the general purpose of the custody granted to DFYS, that is important under subsection .100(f). The superior court only grants legal "custody" to DFYS, whereas DFYS makes all initial "placement" decisions.[15] Thus subsection .100(f)'s "placement for adoptive purposes" language refers to DFYS's specific decisions concerning "placement" of a child in its custody, not to the court's threshold decision to give DFYS "custody" over the child.

DFYS's reading of AS 47.14.100 would prevent a fully qualified blood relative from seeking placement under subsection .100(e) despite long-standing, unsuccessful attempts at permanent placement.

Consequently, on remand the superior court must determine whether J.M.'s placement with his foster family is actually for adoptive purposes. If it is not, subsection

---

**15.** *See* AS 47.10.080(c)(1)-(3), (f); *In re B.L.J.,* 717 P.2d at 379–81.

.100(f) does not disqualify S.S.M. from seeking preferential placement under subsection .100(e).

## IV. *CONCLUSION*

For these reasons, we VACATE the August 31, 1999, order denying S.S.M.'s motion requesting the state to place J.M. with her and REMAND for further proceedings consistent with this opinion.