*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, DEPARTMENT OF HEALTH & SOCIAL SERVICES, OFFICE OF CHILDREN'S SERVICES, | ) ) ) | Supreme Court Nos. S-16574/16594 |
| | ) | Superior Court No. 4BE-14-00081 CN |
| Appellant and Cross-Appellee, | ) ) | O P I N I O N |
| | ) | |
| v. | ) | No. 7221 – February 9, 2018 |
| | ) | |
| MICHELLE P., | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MORRIS L., | ) | |
| | ) | |
| Appellee and Cross-Appellant. | ) ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Dwayne W. McConnell, Judge.

Appearances: Laura Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellant and Cross-Appellee. William T. Montgomery, Assistant Public Advocate, Bethel, and Richard K. Allen, Public Advocate, Anchorage, for Appellees and Cross-Appellant. No appearance by Native Village of Tuluksak. No appearance by Guardian Ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.    INTRODUCTION

A court must have jurisdiction to rule on a case. The superior court dismissed a Child in Need of Aid (CINA) petition because it believed it no longer had jurisdiction over the case after the disposition order granting the Office of Children's Services (OCS) custody of the child had expired. We hold that jurisdiction over a CINA case is distinct from the grant of custody or supervision to OCS in a disposition order and that it derives from the child's status as a child in need of aid. We therefore reverse the superior court's order dismissing the petition and remand for further proceedings.

Before dismissing the CINA petition, the superior court entered removal findings based only on a motion filed by OCS. This was error because the removal order was not supported by sufficient evidence and did not comply with the requirements of the Indian Child Welfare Act (ICWA).[1] We therefore reverse the removal findings and remand for further proceedings consistent with this opinion.

---

[1]     25 U.S.C. §§ 1901-1963 (2012). ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." *Id.* § 1902.

## II. FACTS AND PROCEEDINGS

### A. Emergency Petition And Temporary Custody Order

Michelle P. and Morris L. are the parents of Natalie, who was born in April 2014.[2] Natalie is an Indian child as defined by ICWA.[3] On October 31, 2014, OCS filed an emergency petition to adjudicate Natalie a child in need of aid and to grant it temporary custody. The petition stated that OCS had taken emergency custody of Natalie the day before and alleged that Natalie was a child in need of aid under AS 47.10.011(2) (incarceration), (6) (physical harm), (9) (neglect), and (10) (substance abuse).

After a temporary custody hearing a magistrate judge found probable cause to believe Natalie faced an imminent risk of physical damage or harm if returned to Michelle. Morris was incarcerated at Palmer Correctional Facility at the time. The magistrate judge further found that Natalie had been neglected, and that OCS had made reasonable and active efforts to prevent the breakup of the Indian family. An adjudication hearing was scheduled for March 2015. The superior court adopted the magistrate judge's findings in a December 4 order. Natalie's tribe entered its appearance after the temporary custody hearing.[4]

---

[2]      Pseudonyms are used to protect the parties' privacy.

[3]      25 U.S.C. § 1903(4) defines "Indian child" as any unmarried person who is under age 18 and is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. Natalie is a child under 18 and is either a member of or eligible for membership in the Native Village of Tuluksak.

[4]      A representative of the tribe filed a notice of appearance in December 2014 and continued to participate in the lengthy proceedings. On May 2, 2016 an attorney for the tribe entered an appearance.

**B.**    **The Parents And OCS Stipulate To Adjudication And OCS Supervision**

At the hearing in March 2015 Michelle stipulated to adjudication and disposition (March 2015 stipulation). The stipulation provided that Natalie was a child in need of aid due to neglect and that OCS would retain custody until Michelle completed treatment at a local substance abuse treatment center. On April 17, her projected completion date, OCS would return Natalie to Michelle's physical custody but would have supervision of Natalie for one year. Michelle confirmed that this was her understanding of the agreement. Morris, who was still incarcerated, appeared by telephone before a magistrate judge two days later and agreed to the stipulation. A permanency hearing was scheduled for October 1, 2015.

**C.**    **Natalie's Second Removal From Her Parents' Home And Modification Of The Disposition From OCS Supervision To OCS Custody**

At the October 1 hearing OCS notified the court that Natalie had been successfully returned to Michelle and that it intended to file a motion to dismiss by the following Monday. The motion was never filed. Instead, a month later OCS filed a "Motion for Removal Findings" pursuant to CINA Rule 17(d)(2), stating that Natalie had been removed from her parents' home on October 3 because Michelle had relapsed and Morris had been arrested for domestic violence. OCS asked that the court make findings that the removal from October 3, 2015 onward was warranted because: (1) continued placement in the home was contrary to Natalie's welfare; (2) placement with her parents would likely result in serious physical or emotional damage to Natalie; (3) there was good cause to deviate from ICWA's foster care placement preferences; and (4) OCS had made active and reasonable efforts to prevent the breakup of the Indian family. OCS's motion was supported by an affidavit from a social worker. No party responded to OCS's motion.

On November 17 the court entered findings authorizing removal as proposed by OCS (November 2015 removal order). The order included a finding that there was "clear and convincing evidence, including the testimony of qualified expert witnesses, that the custody of the child by the parents [was] likely to result in serious emotional or physical damage to the child[]."

On February 29 Morris filed a "Motion to Return Child and/or Request for Hearing on the Return of the Child." He argued that Natalie must be returned to her parents because the November 2015 removal order was unlawful and that the only way for OCS to assume custody of Natalie was by requesting a temporary custody hearing or removal hearing under CINA Rule 10. Alternatively, he requested a CINA Rule 19.1(c) review hearing, asserting that his recent release from incarceration constituted a change in circumstances. Based on Morris's motion, the court eventually scheduled a CINA Rule 19.1(c) review hearing for April 22.

### D. Litigation Of Morris's Motion To Dismiss

On March 25 OCS filed a petition to extend its custody of Natalie for one year, pursuant to AS 47.10.080(c)(1)(A). One day before the scheduled CINA Rule 19.1(c) review hearing Morris filed an expedited motion to dismiss. He argued that the existing disposition order had expired on March 19, 2016, and OCS's petition to extend custody had not been filed until March 25. Morris argued that the court no longer had jurisdiction over Natalie because the petition to extend custody was untimely.[5] OCS's opposition argued that the court's November 2015 removal order voided the March 2015 stipulation's expiration date because the November 2015 removal order was

---

[5] CINA Rule 19.2(a) provides in pertinent part: "(a) Petition. The Department or the child's guardian ad litem may file a petition for an extension of the commitment to custody or supervision. The petition must be filed at least [30] days prior to the expiration of the existing disposition order."

actually a temporary custody order of an indefinite duration. Natalie's tribe joined Morris's motion to dismiss. In addition to restating or otherwise joining Morris's arguments, the tribe argued that OCS's "failure to strictly comply with the requirements of [CINA Rule] 19.2(a) mean[t] that the untimely-filed petition for an extension of custody [was] void and unenforceable." On May 19 the court denied the motion to dismiss. The court reasoned that, due to Morris's requested continuances of earlier hearings and the continued litigation regarding removal, the issue of custody was tolled.

On November 22 the court issued a notice that it was reconsidering, sua sponte, its order denying Morris's motion to dismiss, and it invited the parties to file briefs. On January 3, 2017, the superior court dismissed the case. The court stated that it was reversing "its order of June 14, 2016.[6] [OCS] did not file pursuant to the rule a petition prior to 30 days before its expiration of March 19, 2016." The court further wrote, "[f]or this reason alone this case is dismissed and the child is ordered to be released from OCS custody."

### F.    Second Emergency Petition And Appeal Of Superior Court's Order Dismissing The Case

The next day OCS filed a new emergency petition to adjudicate Natalie a child in need of aid,[7] stating in pertinent part:

> On January 3, 2017, the Court entered an order of dismissal after it sua sponte reconsidered a previously entered order denying motion to dismiss filed by the father. At the time of

---

[6]    This appears to have been an error as the court entered the order denying the motion to dismiss on May 19, 2016.

[7]    OCS asserted that Natalie was a child in need of aid under AS 47.10.011(1) (abandonment), (6) (physical harm), (8) (mental injury), (9) (neglect), and (10) (substance abuse).

the court's order [Natalie] was placed in licensed foster care . . . in [a village]. The parents reside in [another village]. . . . [Natalie] faces imminent risk of physical harm or damage as a result of the Court's order, which releases a . . . child without any arrangements for an adult caregiver to provide for her.

At the emergency hearing on January 5 OCS argued that the court's order granting Morris's motion to dismiss created the emergency and that there was no requirement that "the harm has to have been perpetrated, necessarily, specifically by the parent." The court disagreed and dismissed the newly filed emergency petition. The court also explained that it had initially denied Morris's motion to dismiss because it believed the extension could be retroactive, but it later determined after additional briefing and review of the case law that it could not retroactively extend a custody order. The court then stated that it was "very concerned for [Natalie] . . . . [and] very concerned because from the history . . . the parents aren't doing their share." The court noted its concern for Natalie's safety and remarked that "[i]t is a terrible position to put a three-year-old child in." But the court reasoned that it had no choice except to grant the motion to dismiss, it said, "I can't fit it into the law, or I would. I mean, that's just as simple as that folks, I don't think it's for the good of the child at all."

OCS appeals the superior court's order of dismissal and the parents have joined in opposing the appeal. Morris brings a cross-appeal of the court's November 2015 removal order; Michelle has not joined his cross-appeal.

## III. STANDARD OF REVIEW

"[W]e exercise our independent judgment 'when interpreting a civil rule' or statute,"[8] and interpret statutes "according to reason, practicality, and common sense,

---

[8]     *Jennifer L. v. State, Dep't of Health & Soc. Servs., Office Children's Servs.*,

(continued...)

taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[9] "We review questions regarding both subject matter jurisdiction and personal jurisdiction de novo, as '[j]urisdictional issues are questions of law subject to [our] independent judgment.' "[10] When we review an issue de novo it is our duty "to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[11]

As for the issues raised in the cross-appeal, whether a superior court's factual findings comply with ICWA requirements is a question of law, which we review de novo.[12] "[W]hether substantial evidence supports the court's conclusion that an Indian child is likely to be seriously harmed if returned to his parent is a mixed question of fact and law."[13] The determination that a child will suffer serious physical or emotional harm if returned to a parent's custody is a factual finding that we review for

---

[8]      (...continued)
357 P.3d 110, 113 (Alaska 2015) (quoting *S.S.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 3 P.3d 342, 344 (Alaska 2000)).

[9]      *Id.* (quoting *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d. 1078, 1082 (Alaska 2011)); *see also* AS 01.10.040(a) ("Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage. Technical words and phrases and those that have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning.").

[10]      *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002) (first alteration in original) (quoting *McCaffery v. Green*, 931 P.2d 407, 408 n.3 (Alaska 1997)).

[11]      *Id.* (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[12]      *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 949-50 (Alaska 2000).

[13]      *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 989 (Alaska 2002) (citing *L.G.*, 14 P.3d at 949-50).

clear error, but whether qualified expert testimony sufficiently supports this determination is a legal question that we review de novo.[14] "In CINA cases, we review issues that were not raised in the trial court for plain error."[15]

## IV. DISCUSSION

### A. It Was Error To Dismiss The Petition Based Upon A Perceived Lack of Jurisdiction.

#### 1. The superior court's jurisdiction over a child in need of aid is distinct from the custody granted to OCS in a disposition order.

This case concerns subject matter jurisdiction, which is "the legal authority of a court to hear and decide a particular type of case."[16] The parents argue that the superior court was correct in concluding that it lacked jurisdiction, or authority, to extend the disposition order giving OCS custody of Natalie because the existing disposition order had expired prior to OCS filing a petition to extend the order. OCS argues that, contrary to the superior court's conclusion in the January 2017 order dismissing the case, jurisdiction is tied to a child's status as a child in need of aid, not the existence of a disposition order granting OCS custody or supervision.

We take this opportunity to expand on what we first recognized in *Erica A. v. State, Department Of Health & Social Services, Division of Family & Youth Services*: the superior court's authority in a CINA proceeding is not dependent upon an

---

[14] *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103-04 (Alaska 2011).

[15] *Kyle S. v. State, Dep't of Health & Soc. Servs. Office of Children's Servs.*, 309 P.3d 1262, 1267 (Alaska 2013).

[16] *Hawkins v. Attatayuk*, 322 P.3d 891, 894 (Alaska 2014) (quoting *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006)).

existing disposition order.[17]  A disposition order confers authority to OCS over a child who has been adjudicated a child in need of aid, but has no impact on a court's authority to hear and decide matters regarding the child.

The legislature has enacted a broad statutory framework governing CINA proceedings.[18]  This framework includes a mandate that the statutes related to CINA proceedings are to

> be liberally construed to . . . achieve the end that a child coming within the jurisdiction of the court under this chapter may receive the care, guidance, treatment, and control that will promote the child's welfare and the parents' participation in the upbringing of the child to the fullest extent consistent with the child's best interests.[19]

It is with this stated legislative intent and construction that we apply and construe CINA statutes.  Our court rules reflect the same broad intent in CINA proceedings; CINA Rule 1(c) states that "[t]hese rules will be construed and applied to promote fairness, accurate fact-finding, the expeditious determination of children's matters, and the best interests of the child."[20]

Alaska Statute 47.10.010 introduces Alaska's child protection framework. The superior court's authority or jurisdiction in a CINA proceeding is conferred by this statute:  "Proceedings relating to a child under 18 years of age residing or found in the state are governed by this chapter when the child is alleged to be or may be determined

---

[17]     66 P.3d 1, 9 (Alaska 2003).

[18]     *See* AS 47.10.010-.990.

[19]     AS 47.10.005.

[20]     CINA Rule 1(c).

by the court to be a child in need of aid under AS 47.10.011."²¹  In another section the legislature has defined what it means to be a "child in need of aid."²²  Alaska Statute 47.10.990(4) defines a "child in need of aid" as "a child found to be within the jurisdiction of the court under AS 47.10.010 and 47.10.011."²³  From the plain meaning of both statutes, the superior court's jurisdiction or authority to hear and decide CINA proceedings thus depends upon either a finding that probable cause exists to believe the child is a child in need of aid pursuant to AS 47.10.142 (the emergency custody statute), or a finding that the child is a child in need of aid pursuant to AS 47.10.011 (the statute that outlines the 12 statutory conditions or circumstances that qualify a child to be adjudicated a child in need of aid).²⁴  Neither statute links the court's jurisdiction or authority to decide the matter to anything other than the child's status as a child in need of aid.

While the introductory statutes establish the basic framework of the court's authority over CINA proceedings, the breadth of that authority is emphasized in AS 47.10.100.  Alaska Statute 47.10.100(a) states the superior court "may at any time stay execution, modify, set aside, revoke, or enlarge a judgment or order, or grant a new hearing, in the exercise of its power of protection over the child and for the child's best

---

[21]     AS 47.10.010(a); *see also* Alaska Const. art. IV, § 1 ("The jurisdiction of courts shall be prescribed by law.").

[22]     AS 47.10.990(4).

[23]     *Id.*

[24]     AS 47.10.011, .142.  The 4 emergency custody situations contemplated in AS 47.10.142 are narrower than the 12 circumstances for which a child can be adjudicated as a "child in need of aid" under AS 47.10.011.  But the question the court considers at a emergency custody and temporary placement hearing has the same focus: whether probable cause exists for believing the child to be a child in need of aid. AS 47.10.142(e).

interests, for a period of time not to exceed two years or in any event extend past the day the child reaches 19 years of age."[25]

In addition to the powers granted the superior court by AS 47.10.100, AS 47.10.083 further clarifies that in a permanency hearing or in a hearing related to a request for extended commitment or extended supervision:

> [T]he court shall, in addition to the requirements of those provisions [governing those types of hearings] and the requirements of court rules, determine whether a child continues to be a child in need of aid at the time of the review or hearing. The court may not continue or extend state custody or supervision of the child unless the court finds that the child continues to be a child in need of aid . . . .[26]

Thus, AS 47.10.083 empowers the superior court to extend commitment and supervision — i.e. disposition — orders, but the court must find that the child continues to be a child in need of aid.[27] Alaska Statute 47.10.083 specifies no limits to the superior court's jurisdiction in a CINA proceeding.

This review of the statutory framework makes clear that the superior court's authority in a CINA proceeding is derived from the child's adjudicated status as a child in need of aid and not from the existence of a disposition order.[28] The parents' interpretation of the statutes and the superior court's order in this case would require us

---

[25] AS 47.10.100(a).

[26] AS 47.10.083.

[27] *Id.*

[28] *See O.R. & C.K. v. State, Dep't of Health & Soc. Servs.*, 932 P.2d 1303, 1307 (Alaska 1997) ("To terminate parental rights under AS 47.10.080(c)(3), a court must first establish jurisdiction over the child by determining that the child is a 'child in need of aid' (CINA) under AS 47.10.010(a)(2)." (footnotes omitted)).

to graft onto the statutes a jurisdictional limit that does not exist.[29]  Such a reading would be inconsistent not only with the statutory text but also with the rules of construction for CINA proceedings, as it would require the superior court to ignore the child's best interests, as was seemingly done in this case.[30]

Our decision in *Erica A.* comports with this interpretation of the statutory framework.  The child in *Erica A.* had been committed to OCS's custody for two years.[31] The disposition order expired on the first day of a termination trial.[32]  Approximately three weeks after the disposition order expired, OCS filed an emergency petition to adjudicate the child as a child in need of aid.[33]  Five days after OCS filed the emergency petition, the superior court entered an order renewing OCS's custody of the child based on the renewed finding that the child was a child in need of aid.[34]  After the emergency petition was filed, but before the court entered its renewed order, the mother signed a power of attorney purporting to give the child's grandmother authority over the child's care and custody.[35]  The mother argued that her attempted transfer of the child's care and custody should be respected because, when she signed it, the superior court lacked

---

[29]    *See Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007) ("[W]e may not read into a statute that which is not there . . . .").

[30]    AS 47.10.005(a).

[31]    66 P.3d 1, 9 (2003).

[32]    *Id.*

[33]    *Id.*

[34]    *Id.*

[35]    *Id.*

jurisdiction over the child.[36]  On appeal we held, in relevant part, that "[n]othing in the statutory grant of authority preclude[d] the extension from being implemented after the initial two-year commitment ha[d] technically expired.  Erica's jurisdictional argument thus lacks merit."[37]

Morris and Michelle argue that we ruled in *Erica A.* "that nothing in AS 47.10.080 prevented the [superior] court from extending [the disposition order] after it expired because the trial court reestablished jurisdiction over the child based on the newly filed petition."  But the parents' argument finds no support in our opinion.  Nothing in the relevant portion of *Erica A.* indicates that the superior court's renewed finding that the child was a child in need of aid "reestablished" the court's jurisdiction over the child; our ruling implicitly found that the superior court's jurisdiction, or authority over the child, was never lost.[38]

In addition to the mistaken conclusion about lack of jurisdiction, it was error for the superior court to simply order Natalie's release back to her parents without considering her safety or best interests.  Under AS 47.10.083, even if the court finds that a child is no longer a child in need of aid, the court may still "establish a specific timetable for gradual reunification of the family and termination of state custody or supervision if the court makes a finding that immediate reunification would be detrimental to the child."[39]  The court's authority is not immediately lost even if the court determines that a child is no longer a child in need of aid, also rebutting the argument

---

[36] *Id.*

[37] *Id*.

[38] *Id.*

[39] AS 47.10.083.

that there must be a disposition order for the court to retain jurisdiction.[40]  And the court is required in all CINA proceedings to consider and act in the child's best interests.[41] Both considerations further support our conclusion that the court's jurisdiction over a child who has been adjudicated in need of aid is not dependent upon a disposition order. Alaska Statute 47.10.083 required the court to act in Natalie's best interests and to consider whether immediately returning her to her parents' custody would have been detrimental, which its comments made clear it believed was the case.

2. **The remedy for OCS's failure to timely file the petition for extension is not dismissal.**

Counsel for Morris and Michelle emphasized at oral argument that if we concluded that a disposition order was not jurisdictional, our decision would render meaningless CINA Rule 19.2(a) which requires OCS to file a petition for extension of a disposition order at least 30 days prior to the expiration of the existing order.[42]

To address this argument we must first review the role of our court rules in our legal system.  This court is empowered to promulgate court rules pursuant to the Alaska Constitution.[43]  Where a procedural provision in a court rule is inconsistent with an Alaska statute, the court rule generally supersedes the statute unless the statute was

---

[40]     *Id.*

[41]     AS 47.10.005; *see also* CINA Rule 1(c).

[42]     CINA Rule 19.2(a).

[43]     Alaska Const. art. IV, § 15 ("The supreme court shall make and promulgate rules governing the administration of all courts.  It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts.  These rules may be changed by the legislature by two-thirds vote of the members elected to each house.").

specifically enacted to change the rule.[44]  The superior court's jurisdiction or authority to decide a case is not procedural; its jurisdiction is substantive and requires legislative enactment.[45]  Our court rules cannot be construed to abrogate or otherwise diminish the court's jurisdiction or authority to hear and decide a case.  The requirement that a petition to extend custody must be filed 30 days before the expiration of an existing disposition order is found in the court rule; there is no statute that sets such a deadline.

The court rules themselves allow time limits, in appropriate circumstances, to be enlarged.[46]  But the rules' deadlines are intended to be observed.  In cases involving rights as fundamental as those affected by CINA proceedings, we emphasize the importance of adhering to the time limits set by the applicable court rules.  We encourage trial courts to rely on monetary sanctions as the preferred means of assuring compliance with the CINA court rules pursuant to Alaska Civil Rule 95.[47]  And we discourage the

---

[44]  CINA Rule 1(d) ("These rules are promulgated pursuant to Alaska constitutional authority granting rulemaking power to the Alaska Supreme Court.  To the extent that the rules are inconsistent with a procedural provision of any Alaska statute not enacted for the specific purpose of changing a rule, these rules supersede the statute to the extent of the inconsistency.").

[45]  Alaska Const. art. IV, § 1 ("The jurisdiction of courts shall be prescribed by law."); *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 395-96 (Alaska 2007) ("Article IV, section 15 of the Alaska Constitution authorizes this court to promulgate 'rules governing practice and procedure in civil and criminal cases in all courts.' . . . The constitution also commits the enactment of all substantive law — that is all law *except* rules of practice and procedure — to the legislature, acting by an affirmative vote of the majority of each house. Thus, the constitution necessarily requires distinguishing between procedural and substantive law." (emphasis in original) (footnotes omitted) (quoting Alaska Const. art. IV, § 15)).

[46]  Alaska R. Civ. P. 6(b); *see also* CINA Rule 1(e), (g).

[47]  Alaska R. Civ. P. 95; *see In re Schmidt*, 114 P.3d 816, 823 (Alaska 2005)
(continued...)

use of sanctions that might affect or prejudice the rights of a party: dismissal in this case ignored Natalie's best interests.[48] The superior court's order dismissing the petition is vacated, and we remand for further proceedings.

### B.     It Was Error To Grant Removal Findings Based Solely On OCS's Unopposed Motion.

#### 1.     It was plain error to grant removal findings absent any evidence to support the findings.

Morris has appealed the superior court's November 2015 removal order. Both parties extensively briefed whether Morris waived his right to appeal the November 2015 removal order by failing to oppose the motion for removal findings before the superior court. We need not address this argument because the superior court's order does not pass muster even under the plain error standard of review which we apply when an issue has not been preserved on appeal.[49]

> 25 U.S.C. § 1912(e) states:
>
> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert

---

[47]     (...continued) ("We have expressed a preference for monetary sanctions over litigation-ending sanctions."); *Sheehan v. Univ. of Alaska*, 700 P.2d 1295, 1298 (Alaska 1985) ("We note that the law favors deciding cases on their merits.").

[48]     *See Fox v. State*, 685 P.2d 1267, 1270 (Alaska App. 1984). Alaska's court of appeals has "encouraged trial [courts] to rely on the use of monetary sanctions as the preferred means of assuring compliance with court rules and orders governing procedural matters." *Id*. Matters before the court of appeals raise fundamental liberty issues similar to those in CINA cases; the court of appeals has endorsed the same approach to enforce compliance with the criminal rules of procedure.

[49]     *Kyle S. v. State, Dep't of Health & Soc. Servs. Office of Children's Servs.*, 309 P.3d 1262, 1267 (Alaska 2013).

witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.[50]

Natalie was in her parents' physical custody but under OCS supervision pursuant to AS 47.10.080(c)(2) when she was removed by OCS in October 2015. This removal falls under 25 U.S.C. § 1912(e) because "any action removing an Indian child from its parent[s] . . . for temporary placement in a foster home . . . where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated" is considered a foster care placement under ICWA.[51] Thus when Natalie was removed from her parents' custody for the second time and her parents could not have her returned on demand, the superior court needed to meet the requirements set out in 25 U.S.C. § 1912(e) to modify the March 2015 stipulation from OCS supervision to OCS custody. OCS appears to have recognized this when it asked the court make the required findings in its "Motion for Removal Findings" even though it argued the findings were necessary under CINA Rule 17(d)(2) rather than under ICWA.

The November 2015 removal order purports to make all of the findings required under ICWA. But the superior court had insufficient evidence upon which to base any findings. OCS attached an affidavit from a social worker to the motion for removal findings. However it included no information regarding whether the social worker qualified as an expert witness and no statement that returning Natalie to her parents was likely to result in serious emotional or physical damage. The affidavit was thus clearly inadequate support for the court's order.

---

[50]     25 U.S.C. § 1912(e) (2012); *see also* CINA Rule 10 & 10.1(b).

[51]     25 U.S.C. § 1903(1)(i).

Even though no party responded to the motion, "[t]he fact that a motion is uncontested does not mean that it must be granted as a matter of right."[52] Even when a motion is unopposed, "the superior court is obligated to carefully examine the motion and any supporting materials in order to determine if granting the motion is warranted."[53]

"[P]lain error exists in a CINA case where 'an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[54] Granting the motion for removal findings with such scant competent evidence to support it was an obvious mistake that created such a likelihood. We therefore vacate the superior court's November 2015 removal order.

The parties take opposing positions on the proper remedy. Morris argues that if the removal findings are vacated, Natalie must be returned to her parents. OCS counters that the appropriate remedy is remand to the superior court for an evidentiary hearing.

The relevant ICWA section provides:

---

[52] *Gallagher v. Gallagher*, 866 P.2d 123, 124 (Alaska 1994). *See, eg.*, *Willie v. State*, 829 P.2d 310, 312 (Alaska 1992) ("[T]he State's failure to respond does not entitle [the defendant] to automatic suppression of the evidence."); *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) ("[T]he proponent has no absolute right to summary judgment merely because the opponent fails to respond."); *Weaver Bros., Inc. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984) (finding summary judgment motion should have been denied even if unopposed when moving party had not met burden of showing there were no issues of material fact).

[53] *S.L. v. J.H.*, 883 P.2d 984, 986 n.6 (Alaska 1994) (per curiam) (citing *State v. Johnson*, 525 P.2d 532, 534-35 (Alaska 1974)).

[54] *Kyle S.*, 309 P.3d at 1267 (alteration in original) (quoting *Lucy J. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1118 (Alaska 2010) (quoting *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 502 (Alaska 2009))).

> Where any petitioner in an Indian child custody proceeding before a State court has improperly removed the child from custody of the parent . . . the court shall decline jurisdiction over such petition and shall forthwith return the child to his parent . . . *unless returning the child to his parent . . . would subject the child to a substantial and immediate danger or threat of such danger.*[55]

Further, CINA Rule 20 provides that "[i]f the court determines that the challenged order violated 25 U.S.C. §§ 1911, 1912 or 1913, the court shall immediately invalidate the order and take other appropriate action which *may* include dismissing the case and ordering the child returned to the parents."[56] Given this framework, vacating the removal order does not require, as Morris urges, that Natalie be immediately returned to her parents without consideration for her safety. Based upon its comments at the January 2017 hearing, the superior court believed that Natalie faced a "substantial and immediate danger or threat of such danger" if she were returned to her parents. Given the time that has passed since that hearing, the appropriate remedy in this case is remand to the superior court to conduct further proceedings to ensure Natalie's safety.

## V.  CONCLUSION

The order dismissing the case and the order granting removal findings are VACATED. We REMAND to the superior court to conduct further proceedings to determine whether OCS continues to have grounds for custody, and if so, whether removal is necessary.

---

[55]  25 U.S.C. § 1920 (emphasis added).

[56]  CINA Rule 20(c) (emphasis added).