*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Adoption of | ) | |
| | ) | Supreme Court No. S-15904 |
| HANNAH L., a Minor. | ) | |
| | ) | Superior Court No. 3PA-13-00149 PR |
| | ) | |
| | ) | O P I N I O N |
| | ) | |
| | ) | No. 7157 – March 10, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Kristen C. Stohler, Stohler Law, P.C., Palmer, for Appellant Daniel W. Notice of nonparticipation filed by Appellee Brandon L. No appearance by Appellee Tarrah W.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

Alleging that parenting failures waived the biological father's otherwise legally required consent, a stepfather petitioned to adopt his wife's daughter over the biological father's objection. The superior court determined that the proposed adoption was not in the child's best interests and denied the petition. On reconsideration the court noted that the child's best interests determination was sufficient to deny the petition and concluded that a determination whether the biological father had waived consent was

unnecessary, but nonetheless determined that the biological father's actions did not constitute a waiver of consent. The stepfather appeals. Because the record supports the court's best interests determination — and that determination by itself is sufficient to block the adoption — we affirm the court's decision denying the adoption petition.

## II.    FACTS AND PROCEEDINGS

Tarrah W. and Brandon L. are the biological parents of Hannah,[1] born in 2007. Tarrah and Brandon never married; they ended their relationship when Hannah was an infant. Tarrah and Daniel W. married in 2008.

Tarrah and Brandon initially had no formal custody and visitation agreement. Brandon exercised frequent visits with Hannah by requesting time from Tarrah, who generally was accommodating. Brandon's time with Hannah included overnight visits approximately every other weekend and other extended visits.

According to Tarrah, Hannah began resisting visitation with Brandon around June 2011. Hannah would scream and cry and refuse to see Brandon. Tarrah would on occasion physically force Hannah to participate by, for example, removing Hannah from Tarrah's car, putting Hannah in Brandon's car, and leaving. Alternatively she might "bribe" Hannah by telling her she could get ice cream or go to the toy store on the way to Brandon's house. Tarrah discussed Hannah's resistence with Brandon, but he was generally dismissive, asserting that children frequently and inexplicably behave defiantly.

Tarrah said she stopped "forcing" Hannah to participate in visitation with Brandon starting in spring 2012; from then until June 2013, despite frequent requests, Brandon saw Hannah only once or twice. Brandon and Tarrah typically communicated

_____

[1]    Initials for the adults' last names and a pseudonym for the child are used to protect the child's privacy.

through text messaging, and his persistent requests generally were ignored.

In April 2013 Tarrah proposed counseling to heal Hannah and Brandon's relationship. Brandon disagreed with counseling, believing there was "nothing wrong with my daughter" and it "could do [her] more damage." He accused Tarrah of being "dramatic" and using counseling as an obstacle to his time with Hannah. Over Brandon's objection Tarrah initiated counseling for Hannah in late April. In June Tarrah told Brandon that the counselor recommended Hannah have no contact with him and that Tarrah was taking that recommendation. Tarrah invited Brandon to call the counselor.

Daniel petitioned in early June to adopt Hannah, asserting that Brandon's consent to the adoption was not required under AS 25.23.050(a).[2] Brandon was not served with the petition. Unaware of the adoption action, a short time later Brandon sued Tarrah for legal and physical custody of Hannah.

---

[2] AS 25.23.040(a)(2) generally requires the father's consent before a minor may be adopted: "[A] petition to adopt a minor may be granted only if written consent . . . has been executed by . . . the father of the minor . . . ." But AS 25.23.050(a) provides:

> Consent to adoption is not required of
>
> > (1) . . . a parent who has abandoned a child for a period of at least six months;
> >
> > (2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency,
> >
> > > (A) to communicate meaningfully with the child, or
> > >
> > > (B) to provide for the care and support of the child as required by law or judicial decree;
> > > . . . .

The superior court consolidated the matters and held an evidentiary hearing on interim custody in August. The court awarded Tarrah interim primary physical custody and awarded Brandon supervised visitation twice weekly. Four supervised visits between Brandon and Hannah were attempted, but visitation continued to be unsuccessful because Hannah verbally and physically resisted meeting with Brandon.

Brandon was allowed to select a new counselor for Hannah to alleviate bias concerns, and Hannah began therapy with the new counselor in September. In November the superior court mediated a settlement agreement addressing the custody dispute and placing the adoption petition on hold for six months. The parties agreed Brandon would not have legal or physical custody, but he gained certain visitation rights. Daniel agreed he would not later argue that Brandon had waived parental consent to adoption by failing to significantly support Hannah if: (1) Brandon paid his base monthly child support for six months; (2) Brandon complied with Hannah's counselor's recommendations; and (3) the counselor believed Brandon and Hannah made sufficient progress during reunification therapy.[3]

After the six months had elapsed a bench trial on the contested adoption took place in May and June of 2014; the superior court made its decision on the record at the end of June and rendered written Findings of Fact and Conclusions of Law in March 2015. The court denied Daniel's adoption petition because it was not in Hannah's best interests[4] and determined that Brandon's conduct did "not justify the termination of

---

[3]     *See* AS 25.23.050(a)(2)(B). The settlement agreement did not address the other two relevant bases for waiver under AS 25.23.050(a). *See* AS 25.23.050(a)(1) (abandoning a child for six months); AS 25.23.050(a)(2)(A) (failing to communicate meaningfully with a child for one year).

[4]     Under AS 25.23.120(c) the superior court may issue a final decree of adoption only if it "determines that the required consents have been obtained or excused
(continued...)

his parental rights." The court instead determined that it was in Hannah's best interests to maintain a relationship with Brandon; the court observed that Brandon had neither "taken a meaningful role" nor "demonstrated consistent involvement" in Hannah's life, and it ordered mandatory reunification therapy with the expectation of transitioning into a regular visitation schedule.

Daniel sought reconsideration, asserting, among other things, that the superior court had failed to determine whether Brandon had waived his right to consent to the adoption. Daniel argued that Brandon's failure to meaningfully communicate, failure to provide support, and abandonment constituted waiver of consent. The court issued a reconsideration order clarifying its findings and conclusions two days after Daniel's motion would otherwise have been deemed denied under Alaska Civil Rule 77(k)(4).[5] The order included findings that Brandon did not waive consent to the adoption. The court also explained it had not previously addressed waiver because "on the basis of the entirety of the testimony heard" it had determined that adoption was not in Hannah's best interests.

Daniel appeals the adoption ruling, asserting that: (1) the court's order on reconsideration should be vacated as a matter of law because it was untimely; (2) the court erred by failing to find that Brandon's consent had been waived; and (3) the court

---

[4]     (...continued)
*and that the adoption is in the best interest of the person to be adopted.*" AS 25.23.120(c) (emphasis added).

[5]     Rule 77(k)(4) establishes in pertinent part:

> If the motion for reconsideration has not been ruled upon by the court within 30 days from the date of the filing of the motion, . . . the motion shall be taken as denied.

Alaska R. Civ. P. 77(k)(4).

erred by deciding that adoption was not in Hannah's best interests. Brandon and Tarrah have not participated in the appeal.

## III.   STANDARD OF REVIEW

"When interpreting the Civil Rules we exercise our independent judgment, adopting the rule of law that is most persuasive in light of reason, precedent, and policy."[6]   "Although we review the superior court's factual findings in adoption proceedings for clear error, we review de novo as [a] matter[] of law whether . . . factual findings satisfy the requirements for application of a statute."[7]   We have explained:

> When reviewing factual findings we ordinarily will not overturn a trial court's finding based on conflicting evidence, and we will not re-weigh evidence when the record provides clear support for the trial court's ruling; it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.[8]

## IV.   DISCUSSION

### A.   The Superior Court Did Not Err By Issuing Its Reconsideration Order.

The superior court issued its written custody and adoption decision in March 2015. Daniel timely moved for reconsideration. After 30 days Daniel's motion was deemed denied under Rule 77(k)(4).[9] Daniel filed a timely notice of appeal the next

---

   **6**      *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 922 (Alaska 2002) (quoting *Peter v. Progressive Corp.*, 986 P.2d 865, 867 (Alaska 1999)).

   **7**      *In re Adoption of S.K.L.H.*, 204 P.3d 320, 324-25 (Alaska 2009).

   **8**      *Id.* at 325 (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs.*, 182 P.3d 1110, 1114 (Alaska 2008)).

   **9**      *See* Alaska R. Civ. P. 77(k)(4) ("If the motion for reconsideration has not been ruled upon by the court within 30 days . . . the motion shall be taken as denied.").

day.[10] But the following day, notwithstanding that the motion to reconsider was already deemed denied under Rule 77(k)(4), the court issued its "Order Denying Motion for Reconsideration and Clarifying Findings of Facts and Conclusions of Law," directly addressing Daniel's reconsideration contentions.

Daniel asserts that the superior court erred by ruling on his motion for reconsideration two days after the 30-day time period provided by Rule 77(k)(4) expired. Daniel urges us "to vacate the trial court's [reconsideration order] as untimely and to rely on the record as it existed [on the date given by Rule 77(k)(4)]." Arguing that the "deadline is not optional, it is mandatory," Daniel suggests that the court made "novel factual and legal findings relative to its original order" that were inappropriate because the order was late.[11] He also contends that the delay required him to undertake unanticipated additional appellate briefing while "not knowing exactly what findings of fact and conclusions of law" were subject to appeal.

We reject Daniel's contentions. To the extent the Civil Rules are "mandatory" in this context, their enforcement is against *parties*, not the court.[12] Rule 77(k)'s limited purpose is "to remedy mistakes in judicial decision-making where

---

[10]     *See* Alaska R. App. P. 204(a)(1), (3)(E) (providing notice of appeal shall be filed within 30 days of judgment appealed from; this period terminates and reinitiates in full at earliest of either court ruling on reconsideration or operation of Rule 77(k)(4)).

[11]     Daniel's additional argument that the superior court's reconsideration findings and conclusions were issued "without allowing any other party an opportunity to respond" is baseless. A court need only consider requesting another party's response before *granting* reconsideration. *See* Alaska R. Civ. P. 77(k)(3). Here the reconsideration motion was Daniel's and the court denied it.

[12]     *Cf.* Alaska R. Civ. P. 95(a) (providing that "[f]or any infraction of these rules" the *trial court* may assess penalties warranted under the circumstances and necessary to discourage future similar conduct, and that such penalties "may be imposed upon *offending attorneys or parties*" (emphasis added)).

grounds exist, while recognizing the need for a fair and efficient administration of justice."[13] A party requesting reconsideration invites the court to reassess its ruling.[14] The court is therefore authorized to enter new factual and legal findings addressing reconsideration arguments. Contrary to Daniel's implication, denying reconsideration by providing additional analysis or clarification cannot in itself be prejudicial. The superior court's additional determinations clarified its prior order's alleged shortcomings, comporting with Rule 77(k)'s purpose of efficiently remedying potential mistakes in judicial decision-making.[15] Moreover the additional findings, conclusions, and analysis better serve us in undertaking meaningful review.[16] Finally, we note that Daniel was notified of his appellate briefing due date over two months after he filed his appeal notice. He then requested and was granted two 30-day extensions to file his brief. Daniel had more than adequate time to address the reconsideration ruling.

We conclude that the superior court did not violate Rule 77(k) by issuing the delayed reconsideration order.

---

[13] *Magden v. Alaska USA Fed. Credit Union*, 36 P.3d 659, 663 (Alaska 2001) (quoting *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995)).

[14] *See* Alaska R. Civ. P. 77(k)(1)-(2) (establishing grounds for reconsideration request and mandating specificity about ruling "movant wishes the court to consider").

[15] *See Magden*, 36 P.3d at 663.

[16] *See Price v. Eastham*, 128 P.3d 725, 727 (Alaska 2006) ("[F]indings are sufficient[] . . . if they resolve all critical areas of dispute in the case and are sufficiently detailed to allow for meaningful appellate review. In particular, the superior court must provide findings sufficient to give a clear understanding of the grounds upon which it reached its decision.").

**B.** **The Superior Court Did Not Err By Denying The Adoption Petition.**

    **1.** **Denial of an adoption petition can be based on either prong — lack of required consent or best interests of the child.**

Under AS 25.23.120(c) a court is permitted to issue a final decree of adoption only if it determines both that "the required consents have been obtained or excused" and that "the adoption is in the best interest of the person to be adopted."[17] The superior court initially ruled that after making its best interests determination it did not need to examine whether Brandon had waived his right to consent to the adoption. Daniel argues that "[t]he trial court erred by failing to make findings whether [Brandon] waived his right to consent to [the] adoption." Daniel's argument is based on a technicality — that if the reconsideration order is vacated there are no consent findings — but, as discussed above, the reconsideration order stands and that order contained consent findings, rendering Daniel's error claim moot.[18]

We nonetheless examine the merits of Daniel's assertion that consent findings are a "threshold matter" to a best interests determination. It is true that at least three of our cases articulate the procedural requirement that: "The statutory scheme for adoption contemplates a separate determination of whose consent must be obtained

---

    [17] *See also In re Adoption of Missy M.*, 133 P.3d 645, 649 (Alaska 2006) ("[AS 25.23.120(c)] expressly requires the trial court to engage in two inquiries, one to determine whether 'the required consents have been obtained or excused' and the other to determine whether 'the adoption is in the best interest of the person to be adopted.' " (quoting AS 25.23.120(c))).

    [18] "A claim is moot where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a 'present live controversy' . . . ." *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (quoting *Municipality of Anchorage v. Baxley*, 946 P.2d 894, 899 (Alaska App. 1997)).

*before* the merits of a petition for adoption are considered."[19]  But in each of those cases a biological parent relied on the consent requirement to preserve parental rights when adoption may well have been in the child's best interests.  When adoption is not in the child's best interests, that determination alone can protect the parental rights regardless of consent or waiver.  Daniel's argument that consent findings must be made separately and irrespective of the best interests determination is therefore without merit.

Daniel also relies on *In re Adoption of S.K.L.H.*, a decision involving biological parents who consented to their child's adoption but then six months later petitioned to set aside the adoption.[20]  Reversing the trial court's decision to set aside the adoption, we concluded that no grounds existed to void the valid written parental consent.[21]  Daniel quotes our *In re S.K.L.H.* comments about consent to adoption and a child's best interests:

> There are times when it may be in the best interests of a child to be adopted, but in the absence of parental consent that may be impossible.  Just as the best interests of a child cannot alone overcome a lack of consent, the best interests of a child cannot alone overcome a valid consent and previously entered adoption decree.[22]

But those statements actually support our conclusion that a negative determination under either prong of AS 25.23.120(c) — consent or best interests — *preserves* parental rights.  To the extent *In re S.K.L.H.* provides guidance in this case, it

---

[19]     *D.L.J. v. W.D.R.*, 635 P.2d 834, 838 (Alaska 1981) (emphasis added); *see In re Missy M.*, 133 P.3d at 649 (quoting *D.L.J.*, 635 P.2d at 838); *S.M.K. v. R.G.G.*, 702 P.2d 620, 623 n.6 (Alaska 1985) (quoting *D.L.J.*, 635 P.2d at 838).

[20]     204 P.3d 320, 321 (Alaska 2009).

[21]     *Id.* at 321, 327-28, 332.

[22]     *Id.* at 328.

supports our holding that both prongs of AS 25.23.120(c) must be satisfied before an adoption can proceed. If both prongs are necessary then the failure to meet either prong is sufficient for the adoption petition to be denied. *In re S.K.L.H.* does not require that superior courts make a consent determination when adoption is not in the child's best interests.

> **2.    We affirm the superior court's determination that adoption is against Hannah's best interests.**

Daniel contends the superior court abused its discretion in its best interests analysis because the court was obligated to consider the nine factors enumerated in AS 25.24.150(c), the statute governing child custody best interests determinations in cases of divorce, legal separation, or placement of a child when one or both parents has died.[23] On reconsideration the court explained that although it was unpersuaded that application of the child custody best interests factors was required, those factors "in fact shaped" the court's determination. Daniel also contends the court committed clear error in its factual findings and erred in its best interests determination.

> **a.    The nine-factor child custody best interests inquiry for domestic relations cases is not mandated for adoption proceedings.**

We disagree with Daniel's assertion that in an adoption proceeding a court must consider AS 25.24.150(c)'s nine factors for deciding the best interests of the child. That statute governs custody decisions, typically in actions between divorcing or separating parents.[24] We have found no statutory language or legislative history, and Daniel points to none, manifesting a legislative mandate or intent to base adoption best

---

[23]    AS 25.24.150(c)(1)-(9).

[24]    *See* AS 25.24.150(a), authorizing courts to "make, modify, or vacate an order for the custody of or visitation with" a minor child "*[i]n an action for divorce or for legal separation*." (Emphasis added.)

interests determinations on the nine factors required in the child custody context.[25]

The statutory factors are not phrased in a manner translating seamlessly into the adoption setting. Custody decisions in domestic relations cases typically do not sever one party's constitutionally protected parental rights. Instead they determine whether the parties — both of whom maintain their parental rights — are suited to continue or assume legal and physical custody of their child, and in what proportion that custody should be shared. And we have never expressed that courts *must* examine the AS 25.24.150(c) factors for a best interests determination in the adoption context.

The adoption case *In re J.J.J.* seemingly suggests some support for Daniel's contention.[26] There we indicated that in AS 25.24.150(c), "the legislature has set forth statutory standards [that] guide the trial courts in the difficult determination of a child's best interests in custody disputes."[27] We then applied those factors in assessing the merits of the trial court's best interests determination.[28] But we did not hold that the AS 25.24.150(c) factors *must* be applied, and the issue of determining the child's best interests was not squarely before us. The *In re J.J.J.* discussion about weighing competing factors, for instance, relied on our decision in the adoption case *S.O. v. W.S.*[29] In *S.O.*, although the adoption petition was filed three years after the 1977 enactment of

---

[25]     *See* AS 25.23.005-.240 (failing to reference domestic relations child custody best interests factors).

[26]     718 P.2d 948 (Alaska 1986).

[27]     *Id.* at 956 (citing a former version of AS 25.24.150(c) containing only six factors).

[28]     *Id.*

[29]     *Id.* (citing *S.O. v. W.S.*, 643 P.2d 997, 1006 (Alaska 1982)).

the AS 25.24.150(c) multiple-factor inquiry,[30] we neither relied on nor made reference to the child custody statutory factors.[31]

Daniel's reliance on *In re S.K.L.H.* is also misplaced. He cites our statement in *In re S.K.L.H.* that "[t]he [trial] court applied the best interests analysis set forth in AS 25.24.150(c), generally applicable in divorce-like proceedings" as an instance where we "acknowledged application" of the child custody factors in the adoption context.[32] We did not object to the trial court's reliance on the child custody factors, but we did not mandate their use.[33] We simply made an observation of the means by which the trial court arrived at its best interests determination.[34]

We conclude as a matter of law that in an adoption proceeding courts are free to consider relevant AS 25.24.150(c) factors for guidance in making a best interests determination but that those factors are not mandatory. The superior court therefore did

---

[30]     643 P.2d at 1000; *see* Ch. 63, § 1, SLA 1977 (enacting the earlier version of AS 25.24.150(c)).

[31]     Without referring to AS 25.24.150(c), *S.O.* instead more generally recognized that in the contested adoption setting the best interests assessment involves not just comparing social status or economic means, but weighing "myriad factors" such as the competing parties' "character and maturity"; their "commitment to the care of the child"; "the child's present bonds of affection"; and "the family setting and stability." *S.O.*, 643 P.2d at 1006 (quoting *In re Anderson*, 589 P.2d 957, 974 (Idaho 1978) (Bakes, J., dissenting)).

[32]     204 P.3d 320, 324 (Alaska 2009) (footnote omitted).

[33]     *Id.*

[34]     *Id.*; *see also In re Adoption of Missy M.*, 133 P.3d 645, 649 n.13 (Alaska 2006) ("The superior court stated that it was using the factors listed in AS 25.24.150(c) to delineate the contours of the best interests of the child standard.").

not err or abuse its discretion by declining to explicitly address each factor in its order.[35]

> **b.** **The superior court did not err by determining that adoption is against Hannah's best interests.[36]**

The superior court determined not only that the adoption is against Hannah's best interests, but also that "[i]t is Hannah's best interest to have her father in her life." The court made several findings relating to Hannah's best interests based on "the entirety of the testimony heard." Specifically the court found that: (1) Hannah's "emotional, mental, and social needs would best be served by working towards developing a loving, meaningful relationship with her father," and Brandon was capable of meeting those needs as long as he complied with the court's recommendations; (2) Brandon was "interested, willing and able to work towards a closer relationship" with Hannah, and their relationship "ha[d] not been destroyed"; and (3) the "love and

---

[35]  *See In re Missy M.*, 133 P.3d at 648 (quoting *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002)) ("We will find an abuse of discretion if the trial court '. . . failed to consider statutorily mandated factors . . . .' ").

[36]  Daniel has not briefed whether the superior court's best interests determination is an ultimate finding of fact reviewed for clear error or a decision reviewed for abuse of discretion. For purposes of this appeal we assume it is the former. *See In re J.J.J.*, 718 P.2d 948, 951, 956 (Alaska 1986) (noting "superior court . . . overturned the [master's] 'best interest' finding as clearly erroneous" and holding "master's finding that the boy's adoption would not be in his best interest was clearly erroneous"); *cf. id.* at 956 ("[T]his single factor is far outweighed by other significant factors and thus does not justify the master's finding that the adoption would not be in the boy's best interests. We have repeatedly stated that in analyzing the best interests of a child, no single factor should be allowed to outweigh all others."). *Compare In re Adoption of Bernard A.*, 77 P.3d 4, 7 (Alaska 2003) (noting in Indian Child Welfare Act adoption cases "the court's best interests of the child finding and other factual findings are reviewed under the 'clearly erroneous' standard" (citing *In re J.J.J.*, 718 P.2d at 957)), *with Caroline J. v. Theodore J.*, 354 P.3d 1085, 1091-92 (Alaska 2015) (reviewing superior court's AS 25.24.150(c) best interests determination in custody case for abuse of discretion).

affection" between Hannah and her father "ha[d] been damaged" but her counselor believed it was in Hannah's best interests to work through her issues with her father "when she [was] ready," and "a relationship with her father need[ed] to be formed." The record supports these findings and we cannot say they are clearly erroneous.

First, prior to spring 2012 when Tarrah stopped "forcing" Hannah into visitation, Brandon's involvement had enhanced Hannah's emotional, mental, and social well-being. Brandon had frequently seen Hannah, including on overnight stays approximately every other weekend during some periods and for other extended visits such as camping and fishing trips. Brandon also presented video of a May 2014 "surprise" visit to his mother's house while Hannah was there, demonstrating that even though she had not spent any appreciable time with him for over two years she was, as the counselor noted, "engaging and responsive" and "initiated joking, physical affection" toward him. The court explained that it gave "significant weight to [the counselor's] opinions of Hannah's emotional needs." The counselor's belief was that "Hannah could benefit in working through this at some point and seeing that her father can be a positive person in her life."

Second, the record supports the superior court's findings that Brandon intended to improve his relationship with his daughter and that their relationship was not beyond repair. The counselor testified that Brandon "really seemed sincere and genuine . . . that he wanted to build a relationship with [Hannah]." After Tarrah began denying Brandon's visitation requests in spring 2012, he persistently continued seeking visits, and, unaware of the adoption petition, he ultimately filed for custody. On the counselor's recommendation Brandon also wrote letters to Hannah, and Hannah wrote back, expressing in at least one reply that she loved Brandon. In addition to frequent letters, Brandon sent Hannah holiday cards and gifts. The video of Brandon and Hannah's May 2014 visit at his mother's house demonstrated that Hannah appeared fairly comfortable

with Brandon. The counselor's assessment of the video was that Hannah was "interacting pleasantly and not demonstrating any fear or any resistence." The superior court noted that although she seemed at times "tentative and uncertain," she "never appeared upset or frightened in the presence of her father." Brandon's efforts to improve his relationship with Hannah, his attempts to maintain a connection with her, and her positive reactions to him support the superior court's findings.

Third, the superior court relied on the counselor's opinion that Hannah should work through her issues with Brandon. The counselor testified: "I absolutely believe that it's worthwhile continuing therapy and . . . [for] Hannah [to] work through this with her dad because I think there is value in it." The counselor explained Hannah's adverse feelings toward her father may have indicated "intense trauma" that she associated with him or they may have just resulted from the child's temperament. Although the counselor was uncertain whether temperament was the cause, she testified that Hannah's behavior could be due to a "perfect storm" of factors including that "her mom's reaction . . . probably was secondarily reinforcing [the] behavior," causing it to grow. The counselor thought Hannah's resistance to Brandon may mean she simply needed "some distance and some space" from the situation before again attempting reconciliation. The counselor's biggest concern was that Hannah not feel abandoned by Brandon, and the counselor felt that after some time had passed Hannah might "be better able to handle the relationship" and come to "see[] that her father can be a positive person in her life."

The record supports both the underlying findings and the superior court's ultimate determination that adoption was not in Hannah's best interests.[37] We affirm the

---

[37] Daniel contests several of the superior court's other factual findings, arguing that the court clearly erred in finding: (1) for a substantial time period Tarrah
(continued...)

-16- **7157**

superior court's order denying the adoption as against Hannah's best interests.[38]

### 3. The best interests determination renders moot the parental consent waiver issues.

Daniel also argues the merits of the superior court's parental consent waiver findings. Daniel contends that Brandon waived his right to consent through each of the following: failure to meaningfully communicate;[39] failure to provide care and support;[40]

---

[37]  (...continued)
refused Brandon visits with Hannah until he met with Tarrah in person; (2) any obvious problems in the parent-child relationship did not begin until summer 2013; (3) there was no corroborating evidence supporting a claim that Brandon's fiancée whipped Hannah with a belt; (4) Daniel and Tarrah filed the adoption petition because they felt Daniel deserved to be recognized as Hannah's legal parent rather than because they were focused on Hannah's best interests; and (5) the counselor testified that Hannah needed a break from the stress of litigation, when she "unambiguously testified" that Hannah needed a break from the stress of working to re-form a relationship with her biological father. Daniel does not explain how these factual challenges relate to legal issues, but we take his argument to be that different fact findings could lead to a determination that the adoption is in Hannah's best interests. We disagree because the superior court's controlling findings about Hannah's best interests have been discussed above, and the court explained those findings were made "on the basis of the entirety of the testimony heard." We again note: "When reviewing factual findings we ordinarily will not overturn a trial court's finding based on conflicting evidence, and we will not re-weigh evidence when the record provides clear support for the trial court's ruling . . . ." *In re S.K.L.H.*, 204 P.3d at 325 (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs.*, 182 P.3d 1110, 1114 (Alaska 2008)).

[38]  Because we conclude that a consent finding was not necessary, the superior court's best interests determination satisfies the statute's requirements. *See In re S.K.L.H.*, 204 P.3d at 325 ("We review de novo . . . whether . . . factual findings satisfy the requirements for application of a statute." (citing *In re Missy M.*, 133 P.3d at 648)).

[39]  AS 25.23.050(a)(2)(A).

[40]  AS 25.23.050(a)(2)(B).

and abandonment.[41]  Because we affirm the superior court's determination that the adoption is against Hannah's best interests and thus no adoption decree may issue,[42] we do not need to address Daniel's claim that the waiver findings were erroneous.[43]

## V.  CONCLUSION

We AFFIRM the superior court's decision denying the adoption petition.

---

[41]  AS 25.23.050(a)(1).

[42]  *See supra* Section IV.B.1.

[43]  *See Maness v. Daily*, 184 P.3d 1, 8 (Alaska 2008) (quoting *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (A claim is moot "where a decision on the issue is no longer relevant to resolving the litigation.")).

We likewise do not need to address the related contention that the superior court misinterpreted the parties' settlement agreement respecting whether Daniel waived his right to argue failure to provide care and support.