*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DEAN S., | ) | |
| | ) | Supreme Court No. S-16840 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3PA-15-00163/ |
| v. | ) | 00164/00165 CN |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | O P I N I O N |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 7243 – May 11, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Kevin Higgins, Law Office of Kevin Higgins, Anchorage, for Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Rachel Levitt, Assistant Public Advocate, and Chad Holt, Public Advocate, Anchorage, Guardian Ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

The biological father of three children validly consented to their adoption in the face of parental rights termination proceedings. Five months later he sought to

withdraw his consent. The superior court determined that withdrawal of the father's consent to adoption would not be in the children's best interests and denied the father permission to withdraw his consent. The father appeals, arguing that the superior court clearly erred in finding that withdrawal of his consent was not in his children's best interests. Because the superior court did not clearly err in this factual determination, we affirm its decision.

## II. FACTS AND PROCEEDINGS

Dean S. and Emily S.[1] are the biological parents of three children, born in 2003, 2004, and 2007.[2] The Office of Children's Services (OCS) became involved with Dean and Emily's family in 2005 when the oldest child was a year old and the middle child about four months old; the youngest was not yet born. OCS received unsubstantiated reports that the children were not being supervised and that the parents were abusing substances. OCS continued to investigate abuse and neglect reports, most of which were unsubstantiated, over the next seven years. OCS ultimately took emergency custody of the children in November 2012.[3]

Dean worked his case plan, and OCS later returned the children to his care. Emily did not cooperate with OCS and had only intermittent contact with the children.

---

[1] Pseudonyms are used to protect the parties' privacy.

[2] The children are not Indian children as defined by the Indian Child Welfare Act. *See* 25 U.S.C. § 1903(4). The Act provides additional protections for parents in the adoption context. *See* 25 U.S.C. § 1913(c) ("In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent.").

[3] *See* AS 47.10.142(a) (providing that OCS may "take emergency custody of a child" upon discovery of enumerated circumstances).

In August 2015 OCS received new reports that Dean was having suicidal thoughts, abusing substances, and neglecting the children. The oldest child, then age 11, reportedly was the primary caregiver for the two younger children. The children were voluntarily moved to Dean's brother's home, but OCS again assumed emergency custody after Dean threatened to remove them.

OCS petitioned for emergency adjudication of the children as in need of aid.[4] The superior court granted OCS temporary custody.[5] OCS established an initial permanency goal of reunification. The children were first placed with Dean's brother, then moved to Dean's sister in May 2016.

OCS petitioned to terminate Dean's and Emily's parental rights in August 2016.[6] The superior court found that neither parent had made substantial progress toward remedying the conditions placing the children in need of aid and that the appropriate permanency plan for the children was adoption. Dean executed a valid consent to adoption in November 2016;[7] in December, Emily did the same.

---

[4] *See* AS 47.10.142(c) ("If [OCS] determines that continued custody is necessary to protect the child, [OCS] shall notify the court of the emergency custody by filing, within 24 hours after custody was assumed, a petition alleging that the child is a child in need of aid.").

[5] *See* AS 47.10.142(e) ("When the temporary custody hearing is held, the court shall determine whether probable cause exists for believing the child to be a child in need of aid, as defined in AS 47.10.990. If the court finds that probable cause exists, it shall order the child committed to [OCS] for temporary placement . . . .").

[6] *See* AS 47.10.088(a) (providing parental rights may be terminated only if court finds by clear and convincing evidence child is in need of aid, parent has not remedied conditions that place child at substantial risk of harm, and OCS has made reasonable efforts to enable safe return of child to family home).

[7] *See* AS 25.23.060 (listing valid consent requirements). Dean does not
(continued...)

Dean moved to withdraw his consent in May 2017.[8] The superior court held an evidentiary hearing in August to determine if withdrawal would be in the children's best interests. Dean testified on his own behalf and a caseworker testified for OCS. Emily did not contest the adoption.

Dean testified that he wanted "full custody" of his children. He wanted to work together with his sister to "decide the route now that we have a clear vision of what needs to be done to raise the kids in a . . . healthy environment," and he thought his custody was preferable to adoption in case his sister died. Dean said he had attended parenting classes, grown closer to his spiritual advisers, addressed his hoarding problems, found a life-skills coach, and identified private agencies that could provide therapy services. Dean conceded living in protective housing with four people to a room, but he believed he could quickly work a "fair" case plan to achieve permanency for his children. Dean also said that he and his sister had been in regular contact but that OCS had tried to "cut off" his contact with her.

The OCS caseworker testified that the children had bonded with Dean's sister and were "comfortable, relaxed" and "thriving." The caseworker said they were doing well in school, the middle child no longer had debilitating tantrums, and the youngest child had become a "mainstream kid" who no longer needed a "shadow"

---

[7]     (...continued)
challenge his consent's validity.

[8]     *See* AS 25.23.070(b) ("A consent to adoption may be withdrawn before the entry of a decree of adoption, within 10 days after the consent is given, by delivering written notice to the person obtaining the consent, or after the 10-day period, if the court finds, after notice and opportunity to be heard is afforded to petitioner, the person seeking the withdrawal, and the agency placing the child for adoption, that the withdrawal is in the best interest of the person to be adopted and the court orders the withdrawal.").

assistant or "had great difficulty at school." The caseworker also said that Dean's sister knew where the children needed to be, got them to school, spent time with them "to build self-esteem and individuality," was a "guiding parent"; the children were affectionate toward her, and they had built a strong family unit. The caseworker indicated that, if Dean retained parental rights and diligently worked his case plan, it likely would take him a year to achieve permanency.

The superior court denied Dean's motion to withdraw his adoption consent in September 2017. The court cited *S.O. v. W.S.*'s best interests standard[9] and found that Dean's sister's adoption of the children was in their best interests. The court credited the caseworker's testimony that the children were thriving, comfortable, relaxed, doing well in school, enjoying where they were living, and in a stable, happy home. The court found Dean had not shown that withdrawal of his adoption consent was in the children's best interests because he lacked the ability to consider their best interests over his own.

Dean appeals, challenging the superior court's best interests finding.

## III.   STANDARD OF REVIEW

We review the superior court's factual findings for clear error.[10] "A factual

---

[9]    *See* 643 P.2d 997, 1006 (Alaska 1982), *overruled on other grounds by Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 481-83 (Alaska 1984). We review this standard *infra* at pp. 7-8.

[10]    *See In re Adoption of S.K.L.H.*, 204 P.3d 320, 324 (Alaska 2009) ("[W]e review the superior court's factual findings in adoption proceedings for clear error."). We have not previously decided what standard of review applies to a best interests finding under AS 25.23.070(b). *See S.O.*, 643 P.2d at 1006 (reviewing only whether superior court applied correct legal standard regarding parental preference). And as we noted in *In re Adoption of Hannah L.*, the superior court's best interests determination is reviewed for clear error in some contexts and abuse of discretion in others. *See* 390 P.3d 1153, 1160 n.36 (Alaska 2017) (contrasting different best interests determinations). But the parties agree that whether "withdrawal is in the best interest of the person to be
(continued...)

finding is clearly erroneous 'when a review of the record leaves us with the definite impression that a mistake has been made.' "[11] Ordinarily, we "will not overturn a trial court's finding based on conflicting evidence, and . . . will not re-weigh evidence when the record provides clear support for the trial court's ruling; 'it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.' "[12]

## IV. DISCUSSION

Withdrawal of adoption consent is governed by AS 25.23.070. Subsection (b) of that statute provides:

> A consent to adoption may be withdrawn before the entry of a decree of adoption, within 10 days after the consent is given, by delivering written notice to the person obtaining the consent, or after the 10-day period, if the court finds, after notice and opportunity to be heard is afforded to petitioner, the person seeking the withdrawal, and the agency placing the child for adoption, that the withdrawal is in the best interest of the person to be adopted and the court orders the withdrawal.

---

[10] (...continued) adopted" is a factual question reviewed for clear error, and we have applied clear error review to best interests findings in the adoption context before. *See id.*; *see also In re Adoption of T.M.K.*, No. S-1839, 1987 WL 1361315, at *3 (Alaska Nov. 4, 1987) ("We conclude that the court's conclusions are not clearly erroneous and therefore affirm."). We therefore assume without deciding that the superior court's best interests determination here is a finding of fact reviewed for clear error. *See Hannah L.*, 390 P.3d at 1160 n.36 ("For purposes of this appeal we assume it is the former [clear error].").

[11] *See S.K.L.H.*, 204 P.3d at 324 n.11 (quoting *In re Adoption of Missy M.*, 133 P.3d 645, 648 (Alaska 2006)).

[12] *Id.* at 325 (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 182 P.3d 1110, 1114 (Alaska 2008)).

Dean's consent and subsequent request to withdraw consent were greater than ten days apart, so the superior court was required to hold a hearing and make a best interests finding for the children.[13]

Under AS 25.23.070's best interests standard, there is no biological parent preference, and the child's best interests are viewed from the child's perspective.[14] When determining a child's best interests, the superior court should not make "a mere comparison of the social status and economic means of the competing sets of parents."[15] The court instead must "careful[ly] weigh[] . . . myriad factors, such as the character and maturity of the parents, their commitment to the care of the child, the child's present bonds of affection, the family setting and stability, and so forth, which together form the foundation for a stable and happy home for the child."[16] Present circumstances, including the child's attachment to the current caregiver, are relevant in determining best interests.[17]

If the superior court uses this legal standard and considers all of the evidence before it, our role on appeal is "quite limited."[18] "Where the trial [court] has guided [its] decision by reference to the best interest of the child and fully considered all

---

[13] See *B.J.B.A. v. M.J.B.*, 620 P.2d 652, 656 (Alaska 1980) (holding that evidentiary hearing to determine best interests is required under AS 25.23.070(b)).

[14] *S.O.*, 643 P.2d at 1005 ("We hold that when a natural parent consents to his or her child's adoption and later seeks to withdraw such consent, no parental preference is to be applied in determining what is in the child's best interest.").

[15] *Id.* at 1006 (quoting *In re Anderson*, 589 P.2d 957, 974 (Idaho 1978) (Bakes, J., dissenting), *reh'g denied* Feb. 16, 1979)).

[16] *Id.* (quoting *Anderson*, 589 P.2d at 974 (Bakes, J., dissenting)).

[17] *Id.* at 1006 n.13.

[18] *Id.* at 1006.

of the evidence before [it], there is very little room for the exercise of appellate discretion."[19]

We have applied this standard meaningfully only once before, in *In re Adoption of T.M.K.*[20] In that case the biological mother gave her consent to adoption and then sought to withdraw it.[21] The superior court found that withdrawal of the mother's consent was not in the daughter's best interests because: the mother inappropriately disciplined the daughter and abandoned her in times of stress; the daughter's psychological welfare, schoolwork, and behavior had improved with her adoptive parents; the daughter felt safer and preferred to live with her adoptive parents; and the mother's efforts to resolve her substance abuse and parenting problems did not outweigh the risk of harm shown by her past behavior.[22] We affirmed, reasoning that the superior court did not clearly err by "carefully examin[ing]" the mother's past history and concluding that the evidence of the daughter's improvements outweighed the benefits of her returning to the mother.[23]

Applying *S.O.*'s standard to this case with *T.M.K.* as a useful analogy, the superior court did not clearly err by finding that withdrawal of Dean's consent would not

---

[19] *Id.* (quoting *In re Adoption of Cox*, 327 So.2d 776, 778 (Fla. 1976)).

[20] No. S-1839, 1987 WL 1361315 (Alaska Nov. 4, 1987). In *S.O.* we said only: "Here, our review of the record satisfies us that the Master reached her decision by reference to J.D.S.'s best interests after fully considering the evidence before her." 643 P.2d at 1006. Looking to *T.M.K* as an unpublished decision is therefore appropriate under Appellate Rule 214(d)(1) as having "persuasive value in relation to an issue in the case . . . [when] there is no published opinion that would serve as well."

[21] *T.M.K.*, 1987 WL 1361315, at *1-2.

[22] *Id.* at *2-3.

[23] *Id.*

be in the children's best interests. Dean concedes that there was no reversible error if the court's interpretation of the testimony was not erroneous. He focuses his attack on the court's finding that "[w]hen asked point blank why the children would be better off with him than with his sister, [Dean] appears to lack the ability to consider the best interests of his children." Dean argues that the court clearly erred by interpreting his testimony as showing an inability to consider his children's best interests.

The superior court's interpretation of Dean's testimony may be harsh, but it is not clearly erroneous. When asked why the children would be better off with him than with his sister, Dean responded: "That's not totally my plan. I think, my opinion, it would be better for me to have that full custody back and let my sister and I decide the route now that we have a clear vision of what needs to be done to raise the kids in a . . . healthy environment." The superior court bolded and italicized "*better for **me***" in its decision to support its conclusion that Dean wanted custody because it was in his best interests, rather than the children's.

The record supports the superior court's interpretation of Dean's testimony. Aside from the plain language of Dean's statement, Dean also testified that he did not believe his case plan was fair, that OCS separates families, that he would "be the only one there" for the children after they turned 18, and that his housing contained four adults per room. Given these statements, and in the context of being asked why it would be better for the children to live with him rather than his sister, Dean's testimony could be interpreted either as wanting parental rights because he believes his influence would be in his children's best interests, or as Dean wanting to influence his children's lives even knowing their living with his sister as their adoptive parent would be better for them. Because we "ordinarily will not overturn a trial court's finding based on conflicting evidence, and . . . will not re-weigh evidence when the record provides clear

support for the trial court's ruling,"[24] the record does not support a "definite impression" that the court's latter interpretation was a mistake.[25]

The record as a whole also supports the superior court's finding that withdrawal of Dean's consent was not in the children's best interests. This case is analogous to *T.M.K.*, where the record showed: (1) the child's psychological welfare, schoolwork, and behavior improved with her adoptive parents; (2) the child felt safer and preferred to live with the adoptive parents; and (3) the mother's efforts to resolve her substance abuse and parenting problems did not outweigh the risk of harm shown by her past behavior.[26] Here, the record shows: (1) the children's psychological welfare, schoolwork, and behavior have improved since living with Dean's sister; (2) the children are bonded with Dean's sister and have built a good relationship with her; and (3) Dean's claims of having addressed his personal and parenting problems are undermined by his previous failure to maintain such behavior after having his children returned to him. We therefore are not left with a "definite impression" that the superior court's best interests finding was a mistake.[27]

## V. CONCLUSION

We AFFIRM the superior court's decision to deny Dean's motion to withdraw his consent to his children's adoption.

---

[24]     *See In re Adoption of S.K.L.H.*, 204 P.3d 320, 325 (Alaska 2009) (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 182 P.3d 1110, 1114 (Alaska 2008)).

[25]     *See id.* at 324 n.11 (quoting *In re Adoption of Missy M.*, 133 P.3d 645, 648 (Alaska 2006)).

[26]     *See* 1987 WL 1361315, at *2-3.

[27]     *See S.K.L.H.*, 204 P.3d at 324 n.11 (quoting *Missy M.*, 133 P.3d at 648).